Mr. Hoffman, you may proceed. Thank you, Your Honor. May it please the Court, Paul Hoffman, representing Appellant Terence Tekoh. As the Court knows from our briefing, we raised two issues on the appeal. One, the judge's erroneous rejection of a Section 1983 claim based on the failure to give Miranda warnings. And the second, the exclusion of Dr. Blendon Gitlin, a coerced confession expert, with respect to the Fifth Amendment coercion claim. With the permission of the Court, I'll take those in order. Our position with respect to the rejection of the 1983 claim based on failure to give Miranda warnings, there would be three elements to that claim. One, that there was a failure to give warnings, and that was admitted. A second one is that they would be used at trial or in a criminal proceeding. In this case, the statement was actually used in the criminal trial, so that's there. And then the third issue would have been whether Mr. Tekoh was in custody within the meeting of Miranda, and that was an issue about which there was dispute and needed to be resolved at trial. The error that the district court made was in rejecting this claim, notwithstanding the fact that there's controlling authority in this circuit. In particular, Stude v. City of Everett, and even more particularly, Jackson v. Barnes. I just want to focus on Jackson for a moment in the sense that it's the clearest circuit authority that there is a Section 1983 claim for failure to give Miranda warnings when a statement taken after that is used in a criminal trial. And the reason we know that is that in Jackson, there was a prior decision in the habeas proceedings in that case where this court overturned the conviction in that case and said specifically in footnote 5 of the decision that they were not reaching any coercion issue, that it was purely for the failure to give Miranda warnings when he was in custody. And this court in the civil case found that that violation gave rise to a Section 1983 claim. The district court misread the Chavez decision, which did not reach as a holding that question. In fact, the easiest way to know that, I think, is that Justice Souter's fifth vote has a footnote in footnote 5 of the Souter opinion. It says, the question whether the absence of Miranda warnings may be a basis for a 1983 action under any circumstances is not before the court. They just didn't decide that question. The plurality opinion of Justice Thomas indicates that those four justices would not have gone that far, but the decision was not that. And this court's decision in Stude also relied on the Seventh Circuit decision in Sornberger, which also finds a Section 1983 claim for failure to give Miranda warnings when a statement taken after that is used in a criminal proceeding. This is a pure error of law. The judge made it absolutely clear that he was rejecting this based on his reading of Chavez. The district court did not deal with the Jackson precedent, which is binding authority in the circuit. Because it's a pure issue of law, it's subject to de novo review, and there's no question that there was prejudice in the sense that the judge required us to show coercion, whereas under Jackson, the failure to give Miranda warnings when in custody, when the statement is used in a criminal proceeding, gives rise to a Section 1983 claim. Counsel, you mentioned Justice Souter's opinion in Chavez. What do you make of Justice Kennedy's opinion, which seems to be a fifth vote for the proposition? I mean, he says the exclusion of unwarranted statements is a complete and sufficient remedy, which seems to suggest that there wouldn't also be a 1983 claim. Well, what I would say to that is that Justice Kennedy did not join in the statement, you know, in the plurality opinion in Section 2A of that decision. And if anything, the Kennedy decision was thought that the plurality didn't go far enough in recognizing rights. So I think, and beyond that, whether I think about it, whether I think that's the right analysis or not, I think that's the analysis that was accepted in Jackson and Stude and Crow and Sonberger. And so I don't think there's a – there certainly was not a majority view that there's no Section 1983 decision, plus the plurality was dealing with a situation in which the statement wasn't used. So, I mean, to say that the Chavez decision is complicated and convoluted would be an understatement. But I don't think that there's a – there's definitely not a holding that there's no Section 1983 violation. I think it's an issue that they, as Justice Souter said in his footnote, that question just was not before the court. And it was the Souter decision that provided the majority in Section 2 of that opinion about sending the case back down to consider the question under the 14th Amendment due process clause. So that would be my answer to that. I don't know if there's more that you would want me to comment on that, but that's how I would see that. Counsel, this is Judge Woodlaw. I have a question for you. Sure. Assuming we were to agree with you that the Miranda violation alone, assuming that he also found he was in custody, was sufficient to show a violation of the Fifth Amendment, why is the error not harmless? Well, because we were not permitted to put a theory of liability that was a viable theory of liability before the jury. That was just completely taken away from us, and we were required to prove an element with respect to the Fifth Amendment claim, specifically coercion, that is not required under Jackson. For example, under Jackson's view of a 1983 claim based on the failure to give Miranda warnings and the use of a statement in there. So the cases that we've cited, Dang and other cases, stand for the proposition that where a party has been required to prove an element that they didn't have to prove, it would almost never be a harmless error. And here, I think it's clear in the circumstances why it would be harmful, because we have two of the three crucial elements are admitted. There were no Miranda warnings. No one disputes that. There's no dispute about the fact that his statement was used in a criminal proceeding. It was. And so the only issue that we should have had to prove was whether he was in custody. And instead of only having to prove that issue, which is what our proposed jury instruction would have done, our alternative theory, we were required to prove coercion, and that's a completely different case. So there's no way that it could be a harmless error in that situation. It was basically rejecting a claim that did not require of us as much proof as the claim that we were required to prove. Answer this question for me, though. I'm just wondering. It seemed as though it was a credibility contest between Vega's version of the facts and Tico's version of the facts. And if the jury believed Vega, then they would necessarily not have thought Tico was in custody. No, under the jury instruction, they were asked to decide that question, but also they were asked to decide whether there was coercion under the factors that the court gave. And so there's no way of knowing whether the jury decided that he was in custody, but what happened wasn't coercive. You just can't tell because they were not given an instruction that required them to just decide whether he was in custody or not. Had there been some jury question or a separate jury instruction or something that focused their attention on that issue alone, then you might know that, but you can't know that in this situation. We don't have a problem with the factors that were in the ultimate jury instruction about whether he's in custody, but that was added to a coercion portion of the instruction, so you can't tell whether the jury decided he was in custody, in which case we would have had a complete violation in a Section 1983 claim versus the other finding. You just can't tell. So that's another reason why it can't be found to be harmless error. The judge should have given the instruction that we proposed, which was a proper instruction under the law in this circuit, and the jury should have been given an opportunity to decide whether he was in custody. Should I switch to the expert exclusion question? It's hard to know body language in this context. That's right, that's right. Judge Miller-Murgaid, do you have any other questions on the first issue? No, but I have a question on the second issue. If we agree with you regarding the jury instruction question, do we reach the question of whether the allegedly coerced confession expert was properly excluded? I think the answer to that is yes, in the sense that, as I read the case law, you can establish a Fifth Amendment claim either because there were no Miranda warnings given and the person was in custody and it was used in trial, or you can prove that there was a coerced statement. And as I read the cases, you can actually prove that, whether he was in custody or not. And so on remand, we would at least have the option, if you overturned based on the expert exclusion, to assert both of those claims in any retrial. That's how I see it. Would that be advisory? I'm just curious if we would even reach that because it would go back for a new trial. Well, it would go back for a new trial, but it could go back for a new trial on both aspects of the claim. In other words, there could be alternative theories that could be advanced to the jury, one of them being that if he's in custody and there are no Miranda warnings and it was used, then that's a completed violation. But we could also make the argument that there was a coercion Fifth Amendment claim either way. I don't want to belabor it. I think that logically we could make that claim. Maybe practically we wouldn't be making that claim because it's a lot easier claim to make the failure to give Miranda warnings. Because your theory is no longer coerced. Well, I don't know. Anyhow, we can move on. Okay. Well, on the merits of the exclusion of the witness and assuming that there is a coercion claim on remand or that this is why it would be important, Dr. Blandon-Gitlon's testimony was really the kind of coerced confession testimony that is given pretty routinely in criminal cases and in some civil cases that we've cited over the years. The district court had to decide if this would be helpful to the jury. And I understand that there are cases where the jury would need an expert to understand how subtle psychological coercion might lead someone falsely to confess. But here the claim is the officer put his hand on his weapon, said, you know, I'm going to have you deported if you don't confess. I mean, couldn't the district court have said, you know, this is sufficiently obvious that the jury doesn't really need an expert in order to be able to understand why that would be coercive? Well, but the question is whether it's helpful to understand the evidence or an issue in that case, right, under 702A. And the big issue for the jury to understand, one of the reasons to introduce an expert of this kind, is that juries and their scientific evidence of this find it, don't accept that innocent people would sign a statement indicating their guilt, right, that juries quite often and quite reasonably would say, well, if someone signed that, then they're probably guilty. What the science shows is that that's not true for lots of reasons. And some of them are subtle, are more subtle. And the fact that they're subtle doesn't mean that they would not lead to a coerced confession. And what Dr. Blendon Gitlin can do and was prepared to do, was to explain why some of the techniques that Mr. Tico was going to testify about, were exactly the kinds of techniques that result in psychological coercion that would lead an innocent person perhaps to sign a statement like that, including something like an evidence ploy where the defendant, Vega, was said to have said, well, we've got all this on video. And that's a ploy that can lead innocent people to sign a statement because they think it's not going to be a problem. The video is going to show that I'm not guilty. And then, of course, there is no video. Or minimization techniques to say, well, it's not such a big deal. Maybe you don't have a girlfriend, that kind of thing. To maximization techniques that are threatening someone with deportation, someone from another country, someone with uncertain immigration status. What she would have been able to do is provide the science that shows that people could, in a situation like this, even if the jury didn't believe the gun or some parts of the story, the jury could believe any part of it that they wanted to believe. But what she did, or what she would have done, is set a context for the jury to understand Mr. Tico's testimony and understand the situation and understand that at least there's a possibility that these kinds of techniques might lead an innocent person to sign a statement like that. And that's the kind of testimony that's given in this kind of case pretty routinely and is often the basis for reversal when it's not given because of how important it is and because ordinary people don't understand that innocent people do this kind of thing. Now, the judge could have limited the testimony in any way the judge thought was appropriate. If there was concern about giving testimony about ultimate conclusions or anything like that, the court could have limited that. In fact, I think there was an offer by the plaintiff's counsel that Ms. Blandon-Gitlin's testimony would only be a half an hour so that she could at least provide this kind of context. And that's clearly relevant to the issues in the case, and it's relevant to credibility. She's not going to testify that he is credible, but it is relevant to the question of the credibility of Mr. Tico's account, which was the crucial issue in the case. And there really isn't any good reason to have kept it out. The district judge said that she had all the qualifications to be an expert witness. There was no question about that. I don't think there's any challenge to scientific methods. There couldn't really be because this kind of science is introduced routinely in many cases. She testified in 37 criminal cases, including the criminal case in this case. And this goes to the very heart of the plaintiff's case on important issues with no reason to keep it out. There's no 403 issue here. And for that reason, it was not harmless error. It was the kind of thing that was crucial for the jury's understanding about how to resolve the credibility decisions that it had to resolve about the facts in the case. I think I may be – I'm not sure where I am time-wise, and I had wanted to – You're about over your time. I was afraid of that. Why don't I stop then? All right. Thank you very much, Mr. Hoffman, and we'll hear from Mr. Kizzee. Thank you. Good afternoon, Your Honors. May it please the Court. My name is Antonio Kizzee of Ivy McNeil Wyatt Purcell & Biggs, lead counsel for defendants and appellees throughout this action. Thank you to the panel for your time and attention today. Unless Your Honors have questions about the record, I intend to proceed directly into my argument on the two points raised by my colleague, Mr. Hoffman. However, as a preliminary matter, I will state what may be the obvious but is worth noting for the panel's decision. The jury has spoken and rendered their verdict twice on this case. They found the plaintiff's evidence and credibility regarding this case of him being arrested and prosecuted for sexually assaulting a female patient in his custody and then acquitted and then claiming that the patient, Ms. Sylvia Lemus, made it up, and then the deputies forced him to confess. The jury's heard all of the evidence from every witness that Mr. Tico wanted, except for his coerced confession expert, which I'll get into momentarily, and rendered their decision. This appeal, placing blame for the verdict on the district court and claiming it abused its discretion, is disingenuous with this record of its careful and repeated, in fact, on seven different occasions, repeated consideration of the matters on appeal. And the record is strong and clear that this appeal is really seeking a third bite at the apple, and it's our position that the jury's verdict and the district court's reasonable discretion should be affirmed. Now, I'm going to proceed differently than my colleague, Mr. Hoffman, because the exclusion of the coerced confession expert came first in the first case, and there's no dispute. Can I ask you not to do that? Can we deal with the other issue, because I'm not sure I agree with Mr. Hoffman, that we need to get to that expert and decide that issue. So I'd like to hear from you first, if you don't mind, on the jury instruction and why you think it was proper or addressed why Mr. Hoffman thinks it was not. Understood. Yes, Your Honor, I absolutely will. So first, the district court, I think, didn't commit any plain error here, because I think it's clear under Claiborne v. Blasner, a 2019 case, as well as U.S. v. Chemock, that when a district court refuses to give a requested jury instruction, which is what repeatedly is raised in this record, the standard is plain error review. Or in the alternative, if the plaintiff objects to the formulation of the jury instruction, that is then an abuse of discretion standard. So here it is our position that the jury instruction was not erroneous and that the appellant fails to show that it would have changed anything about the verdict, because if Your Honor's look at... I'm not attacking you, counsel, on how this is plain error. I mean, this was the instruction that we're talking about. In fact, let me just ask you a question, because you don't spend much time in your briefing explaining why the jury instruction properly articulated the law, so I want to understand your position. You briefly, and I say briefly, argue that the plaintiff's view of law is wrong in light of the Supreme Court's decision in Chavez, and you cite to some pre-Chavez Supreme Court cases, but from my review of your brief, you do not address the Dickerson Supreme Court opinion or the fact that we held in Jackson v. Barnes that a violation of Miranda was actionable under 1983, and it seems to me, at least in my view, we're bound by those opinions, and so I'd like for you to address how we can hold that a violation of Miranda is not actionable in light of this controlling precedent. Thank you, Your Honor. In terms of addressing your question, you know, it's our position here that in suit, looking at plaintiff's authority in Hall v. City of L.A., Crow v. County of San Diego, Cooper, etc., first, these cases, I think, all require coercion, and the jury was properly instructed on coercion. The jury was properly instructed on the in-custody factors in Kim. Frankly, if the court turns its attention to excerpts of record 879 and 880, appellant's counsel at that time, Mr. Burton, says, quote, we think the jury could find that he was in custody based on the five Kim factors that we have submitted for the jury determination, and then in excerpts of record page 1430, Mr. Burton says, thank you, Your Honor, and thank you for instructing on the United States Kim factors. I think that is entirely appropriate. Here, Your Honor, notwithstanding the court's holding in Jackson, we think that the court can find several things. First, that it is harmless error because, one, there's no model jury instruction on it. Secondly, in terms of the question of coercion, that the court was thoroughly instructed on factors offered by appellant to determine coercion. The court adopted, I believe, nearly all of appellant's instructions regarding the in-custody factors in Kim. And thirdly, as I think the court indicated earlier, this case comes down to credibility. The appellant's, I'm sorry, the appellee's already testified, and it's in the record that, hey, the appellant's testimony or his statement was entirely voluntary. He didn't ask for a lawyer. He didn't ask to leave. He didn't, they didn't engage in any coercive behavior. So ultimately, Your Honor, we think that this case is not incompatible with Jackson because ultimately it comes down to a credibility determination between whether the jury believes what the appellee's said happened in that room or whether the jury believes what the appellant said happened in that room. We think that the instruction was wrong. I mean, I think you're spilling in harmless error. It seems like to me what you're doing, but I'm not 100% sure because I'm not sure you've addressed my question here. I don't think you really told me why we shouldn't follow Jackson in this case. And I guess I'm just kind of confused because the coercion is, you know, based on the instruction that was given, that would be a jury determination of fact that we're not able to do it if we find that the instruction was wrong, was problematic. So I guess I'm trying to figure out, I mean, and then beyond that, it looks like if the instruction should have been that there is a way to go forward on a 1983 claim based on a violation of veranda when it is used in a criminal proceeding against someone like this case, and all of those other factors were mixed together with the coercion, I'm not sure I understand how we would be able to make that determination. And it's very likely that the jury could have determined that he was in custody without a violation, without his veranda rights being given or detained. And not coerced. I mean, they could have believed part of what Deputy Vega said, but not all of it. And the same for Tico. Yes, Your Honor. The jury could have believed any combination of the facts articulated by the plaintiff in the sentence. However, we think here, notwithstanding Jackson, ultimately, even if the court finds that the instruction could have been better, you know, based on the holding in Jackson, we think here that the court can still find that it's not necessarily harmful because, as I said, this entire case is disputed. It's coming down to entirely two gravely different versions of the incident that the jury was instructed to either believe or not believe. Whether or not the instruction could have been better, well, there can be argument forever on that point. But in terms of Jackson here, we think, Your Honor, that in terms of what the Supreme Court authority starting with Chavez, that Miranda starts as a prophylactic rule. And then in all of the cases except for Jackson cited by plaintiffs, they require a coercive interrogation element. Then when you get into Jackson where the court may find a violation of Miranda coupled with its use in a criminal proceeding as the basis of a 1983 action, then we get, however, if this jury instruction was changed, would it really have changed the outcome? And here we think it would not because this case comes down entirely to credibility. So does your response, you know, rise and fall on your interpretation of Chavez? We don't necessarily think so, Your Honor, because in Chavez, you know, in Chavez here, I think that that was sort of the pre- in Chavez it really mostly holds a coercive interrogation in and of itself is not actionable under 1983. Then the case or the holding in that case is further interpreted and evolves in the cases cited by plaintiffs that were, you know, such as- How do you reconcile Dickerson? I guess I'm trying to figure out because from your briefing, you discussed Chavez in one sentence without any analysis or whether it's binding authority. And then you cite to pre-Dickerson Supreme Court law. Talk to me about Dickerson and why we should ignore it and then why we should not apply our binding precedent in Jackson and Stute. Yes, Your Honor. So regarding the binding precedent in Jackson and Stute, we think that if you really look at what Stute held, essentially Stute discussed when do pretrial proceedings begin in terms of the use of a coerced statement in pretrial proceedings that may give rise to a 1983 action. And then when we get to Chavez, that's holding that a coercive interrogation in and of itself may not rise to 1983. Then, Your Honor, in terms of Dickerson- Your view was that there was a majority opinion in Chavez? No, Your Honor. We believe it's clear that there's a plurality in terms of the holding in Chavez as to whether a coercive interrogation in and of itself is a 1983. But Chavez does not decide whether or at what point its use in a criminal proceeding begins. Think about if that was the question pending. Well, let's see. Maybe someone can help me out. I thought he was getting to his limit. But now the clock says 833. Deanna? Deanna? I'm sorry, Judge. What was that? Is that saying he has 8 minutes left? Yes. He's not over. He has 8 minutes and 25 seconds left. Okay. It is 20 minutes per side. All right. Thank you. Sorry to interrupt. I thought I saw something different on my clock. Understood, Your Honor. And then in Dickerson, in that particular case where the court finds that Miranda is constitutionally based by the late Chief Justice Rehnquist, you know, we think that that's not necessarily dispositive of the issues here. And then moving forward in 2016. Why not? Yeah, why not? Well, we think because in Chavez, I think that there was dispute in Chavez as to whether the Miranda requirement was constitutionally based at its core of a Fifth Amendment. But, Counsel, the problem with Chavez, at least from my point of view, is if Justice Thomas' plurality opinion had been a majority, then you'd have a very strong argument based on Chavez. But it wasn't. And as your opposing counsel pointed out, Justice Souter, who concurred in the judgment and provided the fifth vote, did not reach the question of whether you can have a 1983 action based on a Miranda violation. And although Justice Kennedy maybe agreed with you, he was in dissent. So I'm not sure that we get to count his as a fifth vote when he didn't concur in the judgment. So maybe you can explain how you think Chavez gets you to where you're going here. Understood, Your Honor. And just in terms of making myself clear, I understand, and I'm not arguing that Chavez is not a plurality opinion, which it clearly is. However, Your Honor, we think here, in terms of the guidance that it could give to this court in addition to the other cases cited, we think that the cases cited by plaintiffs either require a coercive element, which was adequately instructed, or in the case of Jackson where this court finds that a Miranda violation, you know, with the introduction of the statement into the criminal proceedings, I think that the court's authority is clear in that point. I can't argue against that. However, what we can argue here and that we do submit is that even so, we still think that the evidence in the record fails to show that it would have changed the outcome here because everything was entirely disputed. The plaintiff got every witness to testify that they wished regarding whether he was in custody or not. The appellees, they testified as to their reasons why they did not consider Mr. Tico in custody for Miranda purposes, and it was up to the jury to either believe Mr. Tico or the defendants. And so we think that in terms of what this appeal is trying to push, it seems like the jury should have found one credibility argument over the other, which we don't think is appropriate here and can still coexist with the holding in Jackson on that point. I guess I don't understand that. Couldn't the jury find that the plaintiff was in custody for Miranda purposes, yet ultimately conclude that Deputy Vega's conduct was not sufficiently egregious to constitute coercion? For example, that Deputy Vega reasonably placed the plaintiff in custody for questioning, but there was no physical threats or racial slurs or violent conduct. The jury very well could in terms of that specific scenario, but the jury could also find that Sergeant Vega described that Mr. Tico's statement was entirely voluntary, thereby not requiring Miranda at that point as well. I know, but so the jury did not have to find a Miranda violation. I mean, however, you know, instead of coercion, I mean, all they needed to do was find a Miranda violation instead of coercion. It could have come out differently here. Well, Yonah, I think that under the... We don't know based on what the instruction they were given what was the basis, whether they found it was coercion or if it was based on the Miranda violation. So I guess I'm trying to figure out what are you relying on to suggest that the jury found no Miranda violation other than an assumption about who the jury found credible. I don't know that that's an appropriate, you know, review for us. Understood, Yonah. Well, in looking at the jury instructions as a whole for prejudicial error, we're thinking that or at least it's our position that when you look at the instructions as a whole, excerpts of records 1757 to 1758, the court goes in-depth as to what the holding in Miranda means, how to determine whether plaintiff was in custody and required the Miranda warnings to be given, and then also indicates that if there's a violation of Miranda, that that could be in particular appropriate to the plaintiff, to the plaintiff's causes of action here. So in terms of Yonah's question on that particular issue, we're relying on not only the issue that this comes down to credibility, but when you're looking at the instructions as a whole, we don't think it misstates the law, nor would any particular change in the instructions cause a different outcome because there are so many of these other factors at play, such as credibility and things of that nature. With only about a minute or so remaining, a minute 45, I count, I would like, if possible, to pivot to the expert issue, which is, we think it's clear here that the district court did not rule in a manifestly erroneous matter or beyond the pale of justification because here, each of the cases, Shea, Hall, all of the cases that plaintiff cites, in those cases, there was an abuse of discretion to exclude a coerced confession expert because the person had a specific preexisting mental or emotional disorder that may render them susceptible to coercion or, in particular, to rendering a false statement. However, here, Mr. Tico's own experts in excerpts of records 788 to 89, 921 and 1510, all testify that Mr. Tico had no such preexisting conditions that would have rendered Dr. Bland and Gitlin's testimony irrelevant. And then the court did also conduct a daubert repeatedly on about seven different occasions, as indicated in our brief, and found, we think adequately, as the appellant conceded in their opposition to the motion in Lemonet, that Dr. Bland and Gitlin was being brought to testify to an ultimate credibility and legal issue as to whether Mr. Tico's confession was false or coerced. So, on those grounds, Your Honor, we would submit that the court did not abuse its discretion in excluding Mr. Tico's experts, nor did it err sufficiently for purposes of the Miranda issue. Unless Your Honors have any further questions. Judge Merguez, Judge Miller, do you have any further questions? No, thank you. Okay, thank you very much, Mr. Kizzee. This case, Tico v. County of Los Angeles, will be submitted, and the court will be adjourned through this session. Thank you for this technological participation.
judges: Wardlaw, Murguia, Miller